## James Mahon v. W. L. Gaither.

1. PROMISSORY NOTES—*Assigned After Maturity—Want of Consideration as a Defense.*—A person who purchases a promissory note after it is due takes it subject to the defense of a want of consideration, even though he gives full value.

2. APPELLATE COURT PRACTICE—*Where Instructions do not Appear in the Abstract.*—Where the instructions do not appear in the abstract this court will decline to consider objections to them made in the briefs.

Assumpsit, on a promissory note. Appeal from the Circuit Court of Wayne County; the Hon. CARROLL C. BOGGS, Judge, presiding. Heard in this court at the February term, 1897. Affirmed. Opinion filed June 10, 1897.

LEEDS & RAMSEY and HANNA & HANNA, attorneys for appellant.

CREIGHTON, KRAMER & KRAMER, attorneys for appellee.

MR. JUSTICE GREEN DELIVERED THE OPINION OF THE COURT.

This suit was brought by appellant to recover the amount of a note given by appellee to E. A. & J. A. Ford, for the sum of $65, with seven per cent interest, dated January 28, 1892, payable six months after date, and indorsed, " Pay to James Mahon, without recourse. E. A. & J. A. Ford." Appellant claims to be an assignee of this note before maturity, and that, as such, he is entitled to the benefit of the last clause of Sec. 9, Chap. 98, Rev. Stat., Starr & Curtis, which provides, " that nothing in this section contained shall be constructed to affect or impair the right of any *bona fide* assignee of any instrument made assignable by this act, when such assignment was made before such instrument became due."

This case was once before us on appeal, Mahon v. Gaither, 59 Ill. App. 583, and upon the record, as it then appeared, we held, and so said in the opinion, "Appellant did purchase this note before maturity and paid for it its full value, without notice of any fraud, or failure or want of consider-

ation as against him. Appellee can not set up and maintain the defense that no consideration was given for the note sued on." The evidence in that record justified the conclusion so announced, but in the record now before us the facts proven are quite different. Appellant alone testified that he bought the note of one Risley, who was a partner of the payees; that he thinks it was six months before the note became due, and afterward says the note was fifteen or twenty days old when he bought it; that the consideration he gave was a credit which he made on a note he held against Risley; that Risley guaranteed the payment of the Gaither note, and without such guaranty he, Mahon, would not have bought it. He further testified the note "was never out of my possession until I sent it to Ed. Bonham's bank for collection;" that "Ed. McManaman never had this note; if he had, it was before I bought it;" "have no recollection of either McManaman or Risley having this note after I bought it." U. S. Staley was the next witness for appellant, and he testified his bank "received note from First National Bank, of date July 9th, from L. A. Goddard, cashier, Mt. Carmel, Illinois; drawer of the note is E. A. and J. A. Ford, payor is W. L. Gaither, date January 28, 1892; payable six months after date, due July 28, '92; amount $65 and interest; returned December 8, 1892."

William Bonham, the only other witness for appellant, testified he got a letter from Mahon inclosing the note, in January, 1893, with directions to sue it. I brought suit in April, 1893; I put in, " Pay to James Mahon," and filled up the blank indorsement.

Crews, for defendant, testified that in April, 1892, Risley had the note and tried to sell it to him; Powell, for defendant, testified Risley came to his place of business and offered to trade a note on Gaither for harness, in March or April, 1892. Gillison, for defendant, testified that about March 3, 1892, he was present when a chattel mortgage was given and a settlement was made between the Ford boys and Gaither, and two notes were delivered to Gaither; there were three notes spoken of; that he afterward, about the last of April, or first of May, saw a note, similar to the two

which had been delivered, which was for $65, payable to the Ford boys in six months after date, signed by W. L. Gaither, in the possession of Risley. Petty, for defendant, testified he saw the note, at the same time witnesses Crews and Powell spoke of, in the possession of Risley, who claimed to own the note, and wanted to trade it to witness. Moore, for defendant, testified he saw Ed. McManaman at Gaither's house in December, or first of January, but thinks it was in December, 1892, that McManaman had a note for $65, signed by W. L. Gaither, payable to the Ford boys, six months after date; that he wanted to sell it to Gaither, who declined to buy it, and offered to sell it to witness. Forbes, for defendant, testified that in December, 1892, Risley came to him and had a note for $65, signed by Gaither, payable to the Ford boys; he offered to trade me note for a horse I was trying to trade off.

This evidence, introduced on behalf of defendant, and the evidence of Staley and Bonham, given on behalf of appellant, directly contradicts the testimony of the latter on the material questions at issue. If these witnesses for defendant were entitled to credit, the note in question was not in the possession of appellant in March, April, May and December, 1892, but Risley then had it and was trying to sell it or trade it off; and in December, 1892, or January, 1893, McManaman had the note and offered it for sale. Moreover, Staley testified that on July 9th his bank received this note from L. A. Goddard, cashier First National Bank, Mt. Carmel, for collection, and returned it December 8, 1892; and Bonham testified he put in the blank indorsement, "Pay to James Mahon," after he received the note from Mahon for collection, in January, 1893. From all this evidence the jury were warranted in their conclusion that appellant was not the " *bona fide* " assignee of the note before it came due, and took it subject to the defense of a want of consideration, which the evidence clearly established.

No instructions appear in the abstract, hence we decline to consider the objections made to same in the brief.

No good reason appearing for the reversal of the judgment, it is affirmed.